IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M.B.,[1]

        Plaintiff,

vs.                                    Case No. 20-1100-SAC

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

        Defendant.

**MEMORANDUM AND ORDER**

    This is an action appealing the denial of Social Security disability benefits. Plaintiff filed his application for benefits on May 19, 2017, alleging that he has been disabled since March 29, 2017. The administrative law judge (ALJ) conducted a hearing on November 14, 2018, considered the evidence, and decided on March 13, 2019 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. Standards of review

    To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had

---

[1] The initials are used to protect privacy interests.

"insured status" under the Social Security program.  See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human

_Services_, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. _Lax_, 489 F.3d at 1084 (quoting _Zoltanski v. F.A.A._, 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the _sufficiency_ of the evidence, not its weight." _Oldham v. Astrue_, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. _The ALJ's decision_ (Tr. 13-22).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 14-15). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fourth step of the evaluation process. The ALJ also determined that there were other light work jobs in the economy that plaintiff was capable of performing.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits through December 31, 2019. Second, plaintiff has not engaged in substantial gainful activity since March 29, 2017. Third, plaintiff has the following severe impairments: psoriasis, degenerative disc disease; inflammatory arthritis; status post total right knee replacement; arthritis of the bilateral knees; angina; and obesity.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that plaintiff can

occasionally lift twenty pounds and frequently lift or carry ten pounds.  Plaintiff can stand and/or walk for six hours and sit for six hours in an eight-hour workday.  Plaintiff can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; and frequently balance on level surfaces.  Plaintiff can frequently stoop, never kneel, occasionally crouch, and never crawl. Plaintiff can frequently reach and frequently finger.  He can occasionally tolerate exposure to extreme cold, extreme heat, wetness and humidity.  Also, plaintiff can occasionally tolerate exposure to vibration, but never tolerate exposure to unprotected moving mechanical parts and unprotected heights.

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could perform his past relevant work as a stock supervisor, as well as other jobs existing in the national economy, such as electrical assembler, router and mail clerk.

This case tips upon the ALJ's evaluation of plaintiff's pain symptoms.  The ALJ acknowledged that plaintiff suffered pain which was consistent with plaintiff's medical impairments.  But, he decided that plaintiff's pain allegations were not substantially supported beyond the degree of functional limitation he described in the RFC. (Tr. 20). He reached this conclusion for the following reasons.  First, he determined that plaintiff's daily activities were not limited to the extent one would expect given plaintiff's complaints.  (Tr. 17).  The ALJ noted that plaintiff maintained

5

the ability to clean, dress, and feed himself. (Tr. 17). This included simple cooking, shopping, driving, laundry, sweeping, dusting, and dishes. (Tr. 17-18). The ALJ also noted that plaintiff did some automotive work. (Tr. 20).

Second, the ALJ noted physical examination findings by Dr. Letourneau, plaintiff's treating rheumatologist from 2016 through January 2018. These findings were typically normal, with occasional joint pain and minimal joint swelling, slight reductions in range of motion of the shoulders and right knee, some findings of edema and tenderness. (Tr. 18). The ALJ also remarked that plaintiff's pain complaints seemed inconsistent with plaintiff's reluctance to increase narcotic pain medication and the absence of a record of hospitalization or emergency treatment. (Tr. 18). The ALJ further noted several findings of normal range of motion, normal reflexes, muscle tone and coordination, as well as unimpaired gait, a lack of complaints, minimal treatment, and few positive exam results. (Tr. 18-19).

Third, the ALJ gave weight to the opinions of a state agency medical consultant who reviewed medical records and other reports and determined in July 2017 and November 2017 that plaintiff could perform light work subject to some limitations consistent with the RFC formulated by the ALJ.

Finally, the ALJ analyzed the opinion and records of Dr. Joseph Sankoorikal, one of plaintiff's treating physicians. The

ALJ considered and rejected Dr. Sankoorikal's medical source statement of November 2018 which limited plaintiff to a less than sedentary exertional level and indicated that plaintiff would miss four days of work per month. The ALJ determined that this opinion was not persuasive because the doctor's own records, which showed "grossly normal" findings, did not support the limitations. (Tr. 20).

The ALJ acknowledged within these findings that there was a record of dysfunctional gait in October 2018 and a prescription for a cane around that time from Dr. Thomas Hamilton. (Tr. 19). But he concluded that "no acceptable medical source opined during the relevant period that [plaintiff] relied upon any assistive device whatsoever." (Tr. 19).

III. The ALJ's decision is supported by substantial evidence.

Plaintiff contends that the RFC posited by the ALJ is not supported by substantial evidence in the record and that the evidence demonstrates plaintiff is incapable of performing even sedentary work. In general, plaintiff asserts that the ALJ gave too much weight to the state agency consultant and too little weight to Dr. Sankoorikal's medical source opinion and to evidence from Dr. Thomas Hamilton.

Under Social Security regulations, and ALJ will consider five factors when evaluating a medical source opinion: supportability, consistency, relationship of the source to the claimant,

7

specialization and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5).  Consistency and supportability are considered the most important factors.  20 C.F.R. § 404.1520c(b)(2).

As already noted, the ALJ supported his decision to deny benefits by referencing plaintiff's activities of daily living, "grossly normal" examination findings, limited treatment, and the opinions of a state agency consultant.  Plaintiff argues that substantial evidence does not support the ALJ's decision to deny benefits because the state agency medical consultant did not review the treatment records after August 2017 and because Dr. Sankoorikal is a treating physician who gave a more recent opinion in November 2018 which demonstrates a decline in plaintiff's condition.  Thus, it is important to consider the arguments and evidence regarding any deterioration in plaintiff's functional capacity.

To reiterate, "substantial evidence" is such evidence as a reasonable mind would consider adequate to support a conclusion. Plaintiff has the burden of proving that he cannot perform his previous gainful employment.

Plaintiff does not point to much evidence showing that plaintiff's condition declined between 2016 and the end of 2018. Dr. Sankoorikal saw plaintiff five or six times between August 4,

2017 and November 21, 2018.[2]  The records of each visit reflect a

normal gait, stable range of motion, and normal strength.

Plaintiff subjectively reported significant pain during the visits

- - from 7 to 9 on a 10-point scale.  These pain measures did not

increase between the first report and the last report.  It was 8

on August 4, 2017.  (Tr. 424).  It was 7 on the medical source

statement dated November 21, 2018.  (Tr. 437).  It was also 7 on

September 18, 2018.[3]  (Tr. 426).

During the November 14, 2018 administrative hearing,

plaintiff's counsel characterized the physical examinations by Dr.

Sankoorikal and Dr. Letourneau (who saw plaintiff numerous times

between April 2016 and January 2018) as "relatively normal . . .

like there was nothing wrong."  (Tr. 45-46).  Before the court,

plaintiff's counsel objects to the ALJ's characterization of

"grossly normal" findings.  This argument, however, does not show

that plaintiff's condition worsened after the state agency

consultant's findings.  Nor does it demonstrate that the ALJ's

decision lacks substantial support.  The ALJ did not find that

plaintiff did not have disabling conditions, only that the extent

---

[2] The court is unsure whether the medical source statement dated November 21, 2018 corresponded with a visit.
[3] Plaintiff did not testify at the administrative hearing that his pain had worsened, but he did testify that itching and seeping on his hands had worsened, although it looked "pretty good" at the time of the hearing.  (Tr. 43-44).  The ALJ noted that recently plaintiff's hands were "positive for rash."  (Tr. 18). There is no contention in the briefing that plaintiff has fingering, gripping or manipulative issues that prevent him from doing work as a stock supervisor.

of plaintiff's disability did not prevent plaintiff from performing his former employment and other light work.

Plaintiff argues that plaintiff has received or been prescribed numerous treatments. Doc. No. 17, p. 2. This also does not show that plaintiff's condition grew worse in 2017 and 2018, only that it may not have improved, or was only a little improved, with treatment.[4]

Plaintiff also argues that plaintiff's prescription for a cane from Dr. Thomas Hamilton after a visit on October 16, 2018, and Dr. Hamilton's notation of dysfunctional gait, multiple arthritic joints and psoriatic rash, is evidence of plaintiff's deteriorating condition. The ALJ did not ignore this evidence and considered it in light of "exam findings indicat[ing] normal range of motion, normal muscle tone and coordination." (Tr. 19). The ALJ also noted that "no acceptable medical source opined during the relevant period that [plaintiff] relied upon any assistive device whatsoever." (Tr. 19). This may include Dr. Sankoorikal who marked on his medical source statement that plaintiff did not require an assistive device. (Tr. 439). Plaintiff testified that he has used a cane for three to four years (Tr. 47) and that he uses the cane when he needs it, which, like his pain, "varies on the day," some weeks every day and some weeks not at all. (Tr. 38

---

[4] Plaintiff testified in the administrative hearing that he takes hydrocodone which works "so-so" on the pain. (Tr. 38).

and 47).  This was noted by the ALJ.  (Tr. 19).  It suggests that the prescription for the cane does not indicate a worsening condition.

Plaintiff compares this case with Leah A.D. v. Saul, 2020 WL 2849475 (D.Kan. 6/2/2020) and Mary W. v. Saul, 2020 WL 1492717 (D.Kan. 3/27/2020).  The court believes that each case is distinguishable.  In Leah A.D., the issue before the court was whether substantial evidence supported a finding that the claimant did not suffer a severe mental impairment.  On initial review, an agency consultant concluded that the claimant did not have a severe mental impairment.  A consultative examiner, however, later determined otherwise and an agency consultant, on consideration of the examiner's opinion, agreed.  The ALJ justified the denial of benefits in part by explaining that the examiner's opinion was not consistent with clinical signs and findings:

> For instance, during the examiner's interview with the claimant was cooperative [sic], pleasant, rather outgoing, and spontaneous although she needed simple instructions repeated on occasion, displayed limited delayed recall, and a borderline immediate memory for complex information.  This opinion was also based on a one-time examination. . .

Id. at * 4.  The court found no inconsistency there (id. at *6) and further noted that the one-time examination was one more examination than the initial agency consultant had reviewed or conducted.  Id. at *5.  On this basis, the court concluded that the ALJ had not adequately explained the "ambiguities or material

11

inconsistencies created by his evaluation of the record evidence."
Id. at *6.

     In this case, the agency consultant reviewed evidence which
included examinations of plaintiff and, although he did not review
Dr. Sankoorikal's records or medical source statement, or Dr.
Hamilton's records, plaintiff has not shown that the ALJ failed to
adequately explain his reasons for giving the agency consultant's
reports persuasive weight and for finding that Dr. Sankoorikal's
medical source statement and Dr. Hamilton's records did not support
a disability benefits award.

     In Mary W., the court remanded a decision to deny benefits
because the ALJ's evaluation of a doctor's opinion misstated the
record when the ALJ said that the doctor's records "consistently"
documented range of motion, strength and tone within "normal
functional limits." The court found there was only one examination
that referred to those issues; that "normal functional limits" was
ambiguous; and the ALJ did not consider the evidence in the context
of a severely obese claimant.  Id. at *4.  These factors are not
present here, particularly when many examinations have shown
normal gait, strength, and range of motion.

IV. Conclusion

     The court finds that opinion of the state agency consultant,
the "grossly normal" examination findings, and the other evidence
discussed above provides sufficient and substantial evidence in

support of the ALJ's RFC and light work findings.  The court further finds that plaintiff's arguments regarding plaintiff's record of treatment, the alleged deterioration in his condition, and the reports of Drs. Sankoorikal and Hamilton, do not sufficiently detract from the sufficiency of the evidence to require remand.  To hold otherwise would be to substitute one reasonable view of the evidence for another.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 15th day of December 2020, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge

13